# **EXHIBIT A**



# Notice of Service of Process

**C9H / ALL**
**Transmittal Number: 24831339**
**Date Processed: 04/27/2022**

| | |
|---|---|
| **Primary Contact:** | SOP UPS - United Parcel<br>SOP - PowerBrief - Wilmington<br>251 Little Falls Dr<br>Wilmington, DE 19808-1674 |
| **Electronic copy provided to:** | Sonja Jackson<br>Arlette Willis |

| | |
|---|---|
| **Entity:** | United Parcel Service, Inc.<br>Entity ID Number  2551129 |
| **Entity Served:** | United Parcel Service, Inc. |
| **Title of Action:** | Pedro Oliveros vs. United Parcel Service, Inc. |
| **Matter Name/ID:** | Pedro Oliveros vs. United Parcel Service, Inc. (11452661) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Discrimination |
| **Court/Agency:** | Alameda County Superior Court, CA |
| **Case/Reference No:** | 22CV010096 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 04/26/2022 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Macias Rodriguez Adams LLP<br>408-455-1243 |
| **Client Requested Information:** | Matter Type: Other/NA |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

JOSE MACIAS, JR., Bar No. 265033
jose@mra-llp.com
HECTOR J. RODRIGUEZ, Bar No. 305446
hector@mra-llp.com
TRAVIS M. ADAMS, Bar No. 303447
travis@mra-llp.com
**MACIAS RODRIGUEZ ADAMS LLP**
1550 The Alameda, Suite 332
San Jose, CA 95126
Telephone:    408.455.1243

Attorneys for Plaintiff
PEDRO OLIVEROS

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**04/19/2022 at 04:56:49 PM**
By: Xian-xii Bowie, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

PEDRO OLIVEROS, an individual;

Plaintiff,

v.

UNITED PARCEL SERVICE, INC., an
Ohio corporation; and DOES 1 through 10,
inclusive,

Defendants.

Case No.  22CV010096

**COMPLAINT FOR DAMAGES**

1.  Age Discrimination

2.  Disability/Medical Condition Discrimination

3.  Violation of California Family Rights Act

4.  Wrongful Termination in Violation of California Public Policy

5.  Intentional Infliction of Emotional Distress

6.  Failure to Pay All Wages

7.  Failure to Pay All Wages Due at Separation

8.  Failure to Provide Wage Statements

9.  Unfair Competition

**DEMAND FOR JURY TRIAL**

1          Plaintiff PEDRO OLIVEROS ("Plaintiff") alleges and complains against Defendants

2   UNITED PARCEL SERVICE, INC., and DOES 1 through 10 inclusive (collectively, "Defendants"),

3   as follows:

4                                  **INTRODUCTION**

5       1.      While it is not unlawful for a company to restructure its operations, employers often

6   use workforce reductions to purge their workforces of one or more of their most dedicated older

7   workers. Older workers after all, often have the highest salaries due to long-term employment and

8   their years of commitment to an organization. The law is clear, however, that employers cannot use a

9   reduction in force as an opportunity to discriminate: "downsizing alone is not necessarily a sufficient

10   explanation, under the FEHA, for the consequent dismissal of [a protected] worker. An employer's

11   freedom to consolidate or reduce its work force, and to eliminate positions in the process, does not

12   mean it may 'use the occasion as a convenient opportunity to get rid of [protected] workers.'

13   [Citations.] Invocation of a right to downsize does not resolve whether the employer had a

14   discriminatory motive for cutting back its work force, or engaged in intentional discrimination when

15   deciding which individual workers to retain and release.") (*Kelly v. Stamps.com, Inc.* (2005) 135

16   Cal.App.4th 1088, 1098, quoting *Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 358.)

17       2.      In the present case, Defendant United Parcel Service, Inc. ("UPS"), like many other

18   companies during the COVID-19 pandemic, has recently decided to clean house to out its old and its

19   sick. A decision that not only violates age and disability discrimination laws but also contradicts the

20   Company's very own foundational practices that initially sought to reward those who help it the most.

21       3.      Founded in 1907, Defendant UPS has grown from a small telegraph service company

22   to one of the world's largest shipping couriers. Defendant UPS is unique from many other large

23   companies because, as recognized in its "Employee Reference Guide," many of its long-time

24   employees "began working at Defendant UPS as teenagers and have spent their entire career with the

25   company."

26       4.      It is not uncommon for many of Defendant UPS's long-time employees, who now have

27   prominent white-collar management and leadership roles, to have started working for the company as

28   young persons in blue-collar operations positions, whether it be working during pre-dawn hours in

<div align="center">2.</div>

warehouses as sorters, loaders, or unloaders, and/or as commercial and residential delivery drivers.

5.      Defendant UPS's practice of promoting employees from blue-collar operational roles to white-collar management and leadership roles has created an extremely loyal and long-term workforce who often spend their entire career working for Defendant UPS until retirement.

6.      Consistent with its blue-collar roots, Defendant UPS also is unlike many large companies because, until very recently, many of its employees have and will enjoy pension benefits upon retirement.

7.      Like many teenagers who later rose to prominence in leadership at Defendant UPS, Plaintiff Pedro Oliveros began working for Defendant UPS on January 2, 1990, at the age of seventeen as a part-time loader/unloader. In this position, Plaintiff Pedro Oliveros spent the twilight hours loading and unloading packages and freight at Defendant UPS's Richmond, California warehouse.

8.      For the next decade, Plaintiff Pedro Oliveros worked as a Hub Supervisor and helped direct Defendant UPS's twilight operational services, so that packages and freight would be ready for day-time delivery by Defendant UPS's army of delivery drivers in their signature brown trucks. Plaintiff Pedro Oliveros served in this supervisory operational role until Defendant UPS promoted him from warehouse operations to management.

9.      Following his stint in operations, Plaintiff Pedro Oliveros spent the next two decades, from 2000 to 2021, in sales and managerial positions, as a Letter Center Coordinator, Senior Account Executive, Major Account Manager, and Area Sales Manager. While working in sales and management, Plaintiff Pedro Oliveros enjoyed success as an individual sales executive of both midsize ($300,000 plus in annual sales) and major (approximately $12,000,000 to $15,000,00 in annual sales) accounts and as a manager of numerous other sales executives in the North Bay "wine country" sales territory. Through his network of sales accounts, Plaintiff Pedro Oliveros differentiated himself from other Senior Account Executives and Area Sales Managers by developing a recognized and specialized expertise of the wine industry, which played a critical role in succeeding in the North Bay "wine country" sales territory. Indeed, approximately 80 percent of Plaintiff Pedro Oliveros's sales accounts in the North Bay "wine country' sales territory were wine producers. In addition, the North Bay "wine country" territory was the largest wine market, in terms of revenue, for Defendant UPS in the country.

3.

10.     While persons like Plaintiff Pedro Oliveros, who rose from the trenches as young persons working in operations to prominent sales and leadership roles, were once heralded as the foundation and the backbone of the company, Defendant UPS's corporate culture seemed to fundamentally change when the company selected Carol Tomé as its new Chief Executive Officer in 2020.

11.     Upon assuming the role of Chief Executive Officer, Carol Tomé seemingly sought to substantially transform Defendant UPS's culture to align more with other large publicly traded companies by making significant structural changes to the company's workforce and benefits.

12.     To substantially contain and reduce labor and operational costs, Defendant UPS implemented aggressive measures to reduce the company's outstanding and future pension liabilities. To reduce future pension liabilities, Defendant UPS announced that its long-time pension program would be eliminated at the end of 2022. To reduce present pension liabilities, Defendant UPS began to systematically restructure and reduce its management-side workforce by presenting numerous older and long-term employees with severance packages that included pension buyouts.

13.     Touting Defendant UPS's efforts to reduce its overall pension liabilities, Chief Executive Officer Carol Tomé, at the company's Investor Day on June 9, 2021, emphasized her efforts since assuming leadership: "We reverse-engineered many of our past practices that with time had become over-engineered; and we moved to a more agile decision-making environment. We've strengthened our balance sheet by repaying $2.55 billion of long-term debt... and reduced our pension liabilities by $6.4 billion . . . and we've done a whole lot more."

14.     Despite over thirty years of dedicated, loyal, and successful service to the company, Plaintiff Pedro Oliveros, who was 48 years old at the time of his wrongful termination, became the victim of age, disability, and medical condition discrimination and thus collateral damage to Defendant UPS's campaign to reduce its older workforce and its overall pension liabilities, when he was involuntary pushed out of the company and terminated from his employment by upper management.

15.     While on a company-approved medical leave of absence for anxiety and stress-related issues, Plaintiff Pedro Olivero's supervisor Gary Brown (who was Director of Sales for the Northern California Sales District) informed Plaintiff Pedro Oliveros that his Area Sales Manager position for

4.

1    the North Bay "wine country" sales territory was selected for elimination and that he only had 72 hours

2    to either accept a demotion to the position of Senior Account Executive in one of the least productive

3    territories in the sales district or a severance package that included a substantial buyout of his otherwise

4    earned pension, when in reality his Area Sales Manager position was never actually selected for

5    elimination.

6         16.    To that end and on the pretense that his Area Sales Manager position for the North Bay

7    "wine country" sales territory was actually eliminated, Plaintiff Pedro Oliveros made the agonizing

8    decision to reluctantly accept the severance package, while still experiencing the stress-related issues

9    that required him to take a company-approved medical leave of absence in the first instance.

10        17.    After Plaintiff Pedro Oliveros informed Defendant UPS that he would accept the

11   severance package in lieu of demotion, Defendant UPS, unbeknownst to Plaintiff Pedro Oliveros (who

12   was still out on a company-approved medical leave of absence), immediately posted his exact same

13   Area Sales Manager position for the North Bay "wine country" sales territory on the UPS job board.

14        18.    Defendant UPS, under the guise of its severance package, then replaced Plaintiff Pedro

15   Oliveros with a much younger (who, on information and belief, is under 40 years old) and

16   inexperienced person from the East Coast who had no relevant experience in the wine industry (unlike

17   Plaintiff Pedro Oliveros who had approximately twenty years of recognized and specialized

18   experience and expertise in the wine industry), even though Plaintiff Pedro Oliveros was cleared to

19   return to work and had demanded that be immediately reinstated into his position.

20        19.    The much younger (who, on information and belief, is under 40 years old) and

21   inexperienced employee who replaced Plaintiff Oliveros was the former subordinate of Dana Holliday,

22   Defendant UPS's Vice President of Sales. On information and belief, Dana Holliday has a reputation

23   of favoritism by promoting younger and inexperienced subordinates who directly worked for him over

24   older and more experienced employees.

25        20.    Indeed, the process of posting Plaintiff Pedro Oliveros' Area Sales Manager position

26   for the North Bay "wine country" sales territory on the UPS job board was a mere formality and a

27   front to rubber stamp the company's decision to replace Plaintiff Pedro Oliveros with Dana Holliday's

28   former subordinate. Indeed, another Senior Account Executive, who also was older and more

                                            5.

1    experienced and qualified than the person who was ultimately selected to replace Plaintiff Pedro

2    Oliveros was effectively shut out of the application process by his superiors because management had

3    already decided that Dana Holliday's former subordinate would assume the position.

4         21.    No employee should have to experience the egregious and deplorable conduct that

5    Plaintiff Pedro Oliveros experienced at the hands of Defendant UPS, let alone an employee who

6    dedicated over thirty years of loyal and successful service to the company. In unlawfully forcing

7    Plaintiff Pedro Oliveros out of the company and by replacing him with a much younger (under 40

8    years old) and inexperienced employee through an act of corporate favoritism, and consistent with

9    Defendant UPS's goal of trimming operational and labor costs by reducing its pension liabilities at the

10   expense of older employees, Defendant UPS betrayed the foundational values that at one point

11   differentiated it from other corporations who seem to put margins and profits over the long-term well-

12   being of its employees.

13        22.    In response to Defendants' unlawful discriminatory conduct against him, Plaintiff

14   Pedro Oliveros brings the present Complaint to vindicate his civil and statutory rights and for the

15   recovery of compensatory and punitive damages, interest, costs, and attorneys' fees.

16                              **JURISDICTION AND VENUE**

17        23.    This court has jurisdiction over this action and each Defendant pursuant to California

18   Code of Civil Procedure section 410.10.

19        24.    The monetary damages sought by Plaintiff Pedro Oliveros exceed the minimal

20   jurisdictional limits of the California Superior Court and will be established according to proof at trial.

21        25.    This Court has jurisdiction over Defendants because Defendants have sufficient

22   minimum contacts in California, or otherwise intentionally avails themselves of the California market

23   to render jurisdiction over them by California courts consistent with traditional notions of fair play

24   and substantial justice.

25        26.    Venue for each Defendant is proper in this judicial district pursuant to California Code

26   of Civil Procedure sections 395, subdivision (a), and 395.5, because some of the acts and omissions

27   alleged in this Complaint occurred in the County of Alameda, each Defendant owns, maintains offices,

28   transacts business, has agent(s) within the County of Alameda, and/or otherwise is found within the

6.

1  County of Alameda, and each Defendant is within the jurisdiction of this Court for purposes of service

2  of process.

3     27. Plaintiff Pedro Oliveros has met all the jurisdictional requirements for proceeding with

4  his claims arising under the Fair Employment and Housing Act, pursuant to California Government

5  Code sections 12960 and 12965, by timely filing an administrative complaint against Defendant UPS

6  with the California Department of Fair Employment and Housing ("DFEH") on April 19, 2022.

7  Plaintiff Pedro Oliveros received his Right to Sue Letter from the DFEH, on April 19, 2022.

8  <div align="center">**PARTIES**</div>

9     28. At all times relevant to this Complaint, Plaintiff PEDRO OLIVEROS worked for

10  Defendant UPS in the State of California.

11     29. Plaintiff Pedro Oliveros began working for Defendant UPS in 1990 as a part-time

12  loader/unloader. In his over thirty-year career working for Defendant UPS, Plaintiff Pedro Oliveros

13  worked in many operational and management positions, including as a: Loader/Unloader; Hub

14  Supervisor; Letter Center Coordinator; Senior Account Executive; Major Account Manager; and Area

15  Sales Manager. From 2015 to his involuntary termination on June 30, 2021, Plaintiff Pedro Oliveros

16  worked as the Area Sales Manager for the North Bay "wine country" sales territory. As the Area Sales

17  Manager for the North Bay "wine country" sales territory, Plaintiff Pedro Oliveros worked out of

18  Defendant UPS's Petaluma, California, office.

19     30. Defendant UNITED PARCEL SERVICE, INC. is an Ohio corporation that operates

20  throughout the United States and around the world. Defendant UNITED PARCEL SERVICE, INC. is

21  one of the world's largest shipping couriers and has offices and conducts business throughout the State

22  of California, including the County of Alameda.

23     31. At all times relevant to this Complaint, Defendant UPS was Plaintiff Pedro Oliveros'

24  "employer" within the meaning of the FEHA, as codified in California Government Code section

25  12926, subdivision (d), in that Defendant UPS regularly employed five (5) or more employees or acted

26  as an agent of the "employer."

27     32. Plaintiff Pedro Oliveros does not know the true names or capacities, whether

28  individual, partner, or corporate, of the defendants sued in this Complaint as DOES 1 through 10,

<div align="center">7.</div>

1  inclusive, and for that reason, these defendants are sued under fictitious names. Plaintiff Pedro

2  Oliveros will seek leave from this Court to amend this Complaint when the true names and capacities

3  of these defendants are ascertained.

4      33.    Upon information and belief, these DOE defendants, whether individual, partner, or

5  corporate, were responsible in some manner for the acts and omissions alleged in this Complaint, and

6  directly and proximately caused Plaintiff Pedro Oliveros to be subject to the unlawful employment

7  practices, wrongs, injuries, and damages alleged in this Complaint.

8      34.    At all times relevant to this Complaint, each of the defendants were members of and

9  engaged in a joint venture, partnership, and common enterprise, and acting within the course and scope

10 of and in pursuance of this joint venture, partnership, and common enterprise.

11     35.    Each of the defendants approved of, condoned, and/or otherwise ratified each and every

12 one of the acts or omissions complained of in this Complaint.

13                                    **FACTUAL BACKGROUND**

14 **Plaintiff Pedro Oliveros's Three Decade Career as an Employee for Defendant UPS**

15     36.    Plaintiff Pedro Oliveros began working for Defendant UPS on January 2, 1990, at the

16 age of seventeen as a part-time loader/unloader. In this position, Plaintiff Pedro Oliveros spent the

17 twilight hours loading and unloading packages and freight at Defendant UPS's Richmond, California

18 warehouse.

19     37.    For the next decade, Plaintiff Pedro Oliveros continued to work in operations for

20 Defendant UPS as a Hub Supervisor. In this position, Plaintiff Pedro Oliveros helped direct the flow

21 of packages and freight in preparation for delivery by Defendant UPS's numerous delivery truck

22 drivers.

23 *Plaintiff Pedro Oliveros's Sales and Management Career at Defendant UPS*

24     38.    In 2000, Defendant UPS promoted Plaintiff Pedro Oliveros from warehouse operations

25 to management as a Letter Center Coordinator. In this position, Plaintiff Pedro Oliveros determined

26 the placement of UPS drop boxes to increase volume and profit by optimizing Defendant UPS's

27 overall logistical network

28     39.    In 2002, Defendant UPS again promoted Plaintiff Pedro Oliveros to the position of

                                            8.

Senior Account Executive for the North Bay "wine country" sales territory. As a Senior Account Executive, Plaintiff Pedro Oliveros managed a book of business that consisted of approximately 150 sales accounts, each of which generated over $300,000 in annual sales. Plaintiff Pedro Oliveros successfully performed this role for twelve years until he received another promotion.

40. In 2014, Defendant UPS again promoted Plaintiff Pedro Oliveros to the position of Major Account Manager. In this position, Plaintiff Pedro Oliveros managed approximately ten sales accounts, each of which generated approximately $12,000,000 to $15,000,000 in annual sales.

41. In 2015, Defendant UPS again promoted Plaintiff Pedro Oliveros to the position of Area Sales Manager for the North Bay "wine country" sales territory. When Plaintiff Pedro Oliveros assumed this position, he managed a group of ten salespeople, including seven Senior Account Executives (who serviced accounts that generated over $300,000 in annual sales) and three Key Account Executives (who serviced accounts that generated less than $300,000 in annual sales). At this time, Plaintiff Pedro Oliveros managed more salespeople than any of the other Area Sales Managers in the Northern California Sales District.

42. In his role as the Area Sales Manager for the North Bay "wine country" sales territory, Plaintiff Pedro Oliveros, through his approximately twenty years of direct experience in the territory, enjoyed great success and differentiated himself from other Area Sales Managers by developing a recognized and specialized expertise of the wine industry, which proved critically important for prospering in the North Bay "wine country" sales territory. Indeed, approximately 80 percent of Plaintiff Pedro Oliveros' sales accounts in the North Bay "wine country" sales territory were wine producers. In that regard, the North Bay "wine country" sales territory represented the largest wine market, in terms of overall revenue, in the country for Defendant UPS. The North Bay "wine country" sales territory was also one the largest sales territories in Defendant UPS's Northern California Sales District, as it represented approximately eight to nine percent of total revenue.

43. As the Area Sales Manager for the North Bay "wine country," Plaintiff Pedro Oliveros leveraged his specialized expertise into tangible success and had several years where he received the rating of "Strong Performer." In 2018, Plaintiff Pedro Oliveros received a rating of "Solid Performer" by surpassing his relevant sales targets. In 2020, Plaintiff Pedro Oliveros, despite the disruption caused

9.

1  by the global COVID-19 pandemic, again surpassed his relevant sales targets (all his individual sales

2  reports also surpassed their own individual sales plans), which translated into significant commission

3  earnings. In 2021, Plaintiff Pedro Oliveros's trend in successful performance continued by again

4  surpassing his relevant sales targets for the first quarter of the fiscal year.

5  **Defendant UPS's Corporate Restructuring and Reduction of Pension Liabilities**

6          44.     Upon assuming the role of Chief Executive Officer, Carol Tomé seemingly sought to

7  transform Defendant UPS's culture to align more with other large publicly traded companies by

8  making significant structural changes to the company's workforce and benefits.

9          45.     To substantially contain and reduce labor and operational costs, Defendant UPS

10  implemented aggressive measures to reduce the company's outstanding and future pension liabilities.

11  To reduce future pension liabilities, Defendant UPS announced that its long-time pension program

12  would be eliminated at the end of 2022. To reduce present liabilities, Defendant UPS began to

13  systematically restructure and reduce its management-side workforce by seeking to push out older

14  workers by presenting these long-term employees with severance packages that included pension

15  buyouts.

16          46.     Touting Defendant UPS's efforts to reduce its overall pension liabilities, Chief

17  Executive Officer Carol Tomé, at the company's Investor Day on June 9, 2021, emphasized her efforts

18  since assuming leadership: "We reverse-engineered many of our past practices that with time had

19  become over-engineered; and we moved to a more agile decision-making environment. We've

20  strengthened our balance sheet by repaying $2.55 billion of long-term debt . . . and reduced our pension

21  liabilities by $6.4 billion . . . and we've done a whole lot more."

22  **Defendant UPS's Discriminatory and Wrongful Termination of Plaintiff Pedro Oliveros**

23  *Plaintiff Pedro Oliveros Takes a Medical Leave of Absence Per His Doctor's Orders*

24          47.     On April 27, 2021, Plaintiff Pedro Oliveros took a company-approved medical leave

25  of absence in accordance with his doctor's diagnosis for anxiety and stress. This was the first and only

26  time Plaintiff Pedro Oliveros ever took a medical leave of absence in his approximate 30-year career

27  working for Defendant UPS.

28          48.     On May 19, 2021, while Plaintiff Pedro Oliveros was out on medical leave for stress-

10.

related issues, Plaintiff Pedro Oliveros's supervisor Gary Brown, who is Defendant UPS's Director of Sales for the Northern California Sales District, informed Plaintiff Pedro Oliveros that Defendant UPS selected him for the Restructuring Separation Allowance Plan ("RSAP Plan") and informed him that his Area Sales Manager position for the North Bay "wine country" sales territory had been eliminated, when in reality his Area Sales Manager position was not actually selected for elimination. Because Defendant UPS selected Plaintiff Pedro Oliveros for the company's RSAP Plan, Gary Brown told Plaintiff Pedro Oliveros that he had 72 hours to decide whether he would accept a demotion to Senior Account Executive (in San Francisco) in one of the most least productive sales territories in the Northern California Sales District or a severance package, which involved a severance payment and a substantial buy-out of his future pension benefits.

49.     When Gary Brown required Plaintiff Pedro Oliveros to provide him with a decision on his RSAP Plan options, Plaintiff Pedro Oliveros was in no condition to make an accurate and reasoned decision on his employment options—let alone a decision within 72 hours—because of the significant stress and anxiety that he was suffering from, which predicated his need for taking a medical leave of absence in the first place. Furthermore, in requiring Plaintiff Pedro Oliveros to make this extremely difficult decision about his future employment with Defendant UPS, Plaintiff Pedro Oliveros's medical condition worsened and the symptoms he was suffering from greatly intensified.

50.     Based on Gary Brown's misrepresentation that his Area Sales Manager position for the North Bay "wine country" sales territory was actually eliminated, Plaintiff Pedro Oliveros, after agonizing over his options and while still experiencing the significant anxiety and stress-related issues that required him to take a company-approved medical leave of absence in the first instance, decided to reluctantly acquiesce to the RSAP Plan severance package.

51.     After Plaintiff Pedro Oliveros had second thoughts about his decision to acquiesce to the RSAP severance package, Plaintiff Pedro Oliveros asked his supervisor Gary Brown if he could still accept the Senior Account Executive position. Gary Brown informed Plaintiff Pedro Oliveros that the Senior Account Executive position was no longer available to him.

52.     Shortly thereafter, Plaintiff Pedro Oliveros learned that his Area Sales Manager position for the North Bay "sales territory" was not in fact eliminated, as Defendant UPS posted

11.

1    Plaintiff Pedro Oliveros's same Area Sales Manager position for the North Bay "wine country" on

2    UPS's job board. Plaintiff Pedro Oliveros also learned that the Senior Account Executive position that

3    was part of his RSAP plan, also was posted on the UPS job board, contrary to Gary Brown's

4    representations.

5          53.     If Gary Brown, Defendant UPS's Director of Sales for the Northern California Sales

6    District, had not represented to Plaintiff Pedro Oliveros that his Area Sales Manager position for the

7    North Bay "wine country" sales territory was not actually eliminated, Plaintiff Pedro Oliveros would

8    not have informed Gary Brown that he would be willing to accept the RSAP Plan's severance package.

9          54.     On June 9, 2021, Plaintiff Pedro Oliveros sent an email to Gary Brown and Dana

10   Holliday, Defendant UPS's Vice President of Sales, asking for an explanation on whether his Area

11   Sales Manager position for the North Bay "wine country" sales territory was actually eliminated,

12   contrary to Gary Brown's initial representation, and questioned whether the company had an ulterior

13   motive in forcing him out of his position.

14         55.     Shortly thereafter, Plaintiff Pedro Oliveros learned that Defendant UPS replaced him

15   as the Area Sales Manager for the North Bay "wine country" sales territory with a much younger (who,

16   on information and belief, is under 40 years old) and inexperienced person from the East Coast who

17   had no relevant experience in the wine industry (unlike Plaintiff Pedro Oliveros who had

18   approximately twenty years of recognized and specialized experience in the wine industry). In that

19   regard, hiring an external candidate without any relevant experience in the wine industry for the Area

20   Sales Manager position for the North Bay "wine country" sales territory defied legitimate business

21   motivations.

22         56.     The much younger (who, on information and belief, is under 40 years old) and

23   inexperienced employee who replaced Plaintiff Pedro Oliveros was the former subordinate of Vice

24   President of Sales Dana Holliday. On information and belief, Dana Holliday has a reputation of

25   favoritism by promoting younger and inexperienced subordinates who directly worked for him over

26   older and more experienced employees.

27         57.     In learning that Defendant UPS had replaced him with a much younger (who, on

28   information and belief, is under 40 years old) and inexperienced person who lacked any relevant

12.

1  experience in the wine industry and who was a former subordinate of Dana Holliday, Plaintiff Pedro

2  Oliveros applied for the Senior Account Executive position for the San Francisco sales territory (which

3  was offered to him as part of the RSAP Plan) in protest to Defendant UPS's apparent decision to

4  unlawfully force him out of the company based on his age, disability, and medical condition, as well

5  as for taking a protected medical leave of absence.

6       58.    On June 14, 2021, Plaintiff Pedro Oliveros, after hearing no response, sent a follow-up

7  message to Gary Brown and Dana Holliday informing them that he had learned that a much younger

8  and inexperienced person from the East Coast without any relevant experience in the wine industry

9  had replaced him as the Area Sales Manager for the North Bay "wine country" sales territory. In this

10  message, Plaintiff Pedro Oliveros demanded that Defendant UPS reinstate him into his Area Sales

11  Manager position for the North Bay "wine country" sales territory upon his return from his company-

12  approved medical leave of absence. Plaintiff Pedro Oliveros also related that he applied for the Senior

13  Account Executive position in San Francisco, which was offered to him as part of the RSAP Plan, in

14  protest.

15  ***Plaintiff Pedro Oliveros Is Cleared to Return to Work***

16       59.    On June 18, 2021, Plaintiff Pedro Oliveros sent another follow-up message to Gary

17  Brown and Dana Holliday, stating that he was cleared to return to work by his doctor and that he

18  intended to return to work as the Area Sales Manager for the North Bay "wine country" sales territory

19  on June 22, 2021.

20       60.    On June 21, 2021, Dana Holliday responded to Plaintiff Pedro Oliveros that Defendant

21  UPS had no available jobs for him, that his Area Sales Manager position for the North Bay "wine

22  country" sales territory had been eliminated, and that his employment would be terminated based on

23  corporate restructuring on June 30, 2021. Dana Holliday also told Plaintiff Pedro Oliveros that he

24  should not report to work on June 22, 2021, and that he would be paid from June 22, 2021, to June 30,

25  2021.

26       61.    On June 23, 2021, Plaintiff Pedro Oliveros sent his final message to Gary Brown and

27  Dana Holliday, expressing his distress in having to suffer an unlawful termination at the behest of

28  Defendant UPS based on his age, disability, and medical condition, as well as for taking a protected

1  medical leave of absence, after having loyally and successfully served the company for over thirty
2  years.

3        62.    Plaintiff Pedro Oliveros was never paid for work from June 22, 2021, to June 30, 2021,
4  as promised by Dana Holliday.

5        63.    As a result of being wrongfully terminated by Defendant UPS, Plaintiff Pedro Oliveros
6  suffered and continues to suffer extreme emotional distress, including anxiety, stress, depression,
7  insomnia, and feelings of humiliation and loss of reputation.

8  **FIRST CAUSE OF ACTION**

9  **Age Discrimination - FEHA**

10  **(Cal. Govt. Code, § 12940, subd. (a))**

11  **Against All Defendants**

12        64.    Plaintiff Pedro Oliveros re-alleges and incorporates by reference all previous
13  paragraphs of this Complaint.

14        65.    At all times relevant to this Complaint, the FEHA (Cal. Govt. Code, § 12900 et seq.)
15  applied to Defendants because Defendants were Plaintiff Pedro Oliveros's "employer," in that
16  Defendants regularly employed five or more persons or acted as an agent of the "employer."

17        66.    California Government Code section 12940, subdivision (a), prohibits employers from
18  discriminating against any employee on the basis of age.

19        67.    At all times relevant to this Complaint, Plaintiff Pedro Oliveros is protected from
20  unlawful employment discrimination based on his age under the FEHA.

21        68.    At all times relevant to this Complaint, Defendants engaged in a series of
22  discriminatory acts against Plaintiff Pedro Oliveros because of his age after he went out on a company-
23  approved medical leave of absence on April 27, 2021, by: (1) misrepresenting to him that his Area
24  Sales Manager position was eliminated based on the RSAP Plan, which offered him the option of
25  accepting a demoted role as a Senior Account Executive in one of the least productive sales territories
26  in the Northern California Sales District or accept a severance package that included a significant
27  buyout of his future pension award—Plaintiff Pedro Oliveros could not accept the RSAP Plan
28  severance package without accepting a buy-out of his future pension award; (2) requiring Plaintiff

14.

Pedro Oliveros to provide an answer to his RSAP Plan "options" within 72 hours, while he was on company-approved medical leave for stress-related issues and was still experiencing those stress-related issues, and on the false pretense that his Area Sales Manager position for the North Bay "wine country" sales territory was actually eliminated through the RSAP Plan; (3) posting Plaintiff Pedro Oliveros's Area Sales Manager position for the North Bay "wine country" sales territory on Defendant UPS's job board after Defendant UPS's Director of Sales Gary Brown told him that his job was eliminated through the RSAP Plan; (4) informing him that the Senior Account Executive position in the San Francisco sales territory was no longer available to him, even though Defendant UPS subsequently posted that position on the UPS job board; (5) replacing him as the Area Sales Manager for the North Bay "wine country" sales territory with a much younger and inexperienced person from the East Coast who lacked any relevant experience in the wine industry (which was critical for success in that territory and unlike Plaintiff Pedro Oliveros who had approximately 20 years of experience in the wine industry and who had developed a specialized knowledge and expertise in the area) and who happened to be a subordinate of Defendant UPS's Vice President of Sales Dana Holliday (who has a reputation of corporate favoritism by promoting younger and inexperienced subordinates who directly worked for him over older and more experienced employees), through an application process that was a mere front and formality and effectively shut out another older and more experienced employee from the position; and (6) wrongfully terminating his employment on the basis of age, disability, and medical condition, as well as for taking a protected medical leave of absence, through the pretense of the RSAP Plan process.

69.     Plaintiff Pedro Oliveros's age was a substantial motivating reason for these series of discriminatory actions committed by Defendants against him.

70.     As a direct and proximate result of Defendants' unlawful discrimination against Plaintiff Pedro Oliveros because of his age, Plaintiff Pedro Oliveros suffered and continues to suffer compensatory damages, including: lost wages; loss of future earnings and earning capacity; loss of bonuses and deferred compensation; loss of benefits, such as health insurance, life insurance, and retirement (including loss of pension contributions); emotional distress; mental anguish; embarrassment; humiliation, loss of future advancement; and damage to his reputation in the business

15.

1    community. Plaintiff Pedro Oliveros additionally seeks prejudgment interest accruing from the date

2    of the filing of this action pursuant to California Civil Code sections 3281 and/or 3288, and/or any

3    other provision of law providing for prejudgment interest.

4         71.    As a direct and proximate result of Defendants' discrimination against Plaintiff Pedro

5    Oliveros because of his age, Plaintiff Pedro Oliveros needed to hire attorneys to prosecute the

6    allegations in this Complaint and has incurred and is expected to continue to incur attorneys' fees.

7    Pursuant to California Government Code section 12965, subdivision (b), Plaintiff Pedro Oliveros

8    requests the Court for an award of attorneys' fees against Defendants.

9         72.    In discriminating against Plaintiff Pedro Oliveros because of his age, Defendants acted

10   oppressively, fraudulently, and maliciously. These acts were carried out, authorized, or ratified by

11   Defendants' directors, officers, and/or managing agents. Plaintiff Pedro Oliveros therefore requests

12   the Court for an award of punitive damages against Defendants in an amount appropriate to punish

13   and make an example of them.

14                              **SECOND CAUSE OF ACTION**

15                     **Disability/Medical Condition Discrimination - FEHA**

16                          **(Cal. Govt. Code, § 12940, subd. (a))**

17                                **Against All Defendants**

18        73.    Plaintiff Pedro Oliveros re-alleges and incorporates by reference all previous

19   paragraphs of this Complaint.

20        74.    At all times relevant to this Complaint, the FEHA (Cal. Govt. Code, § 12900 et seq.)

21   applied to Defendants because Defendants were Plaintiff Pedro Oliveros's "employer," in that

22   Defendants regularly employed five or more persons or acted as an agent of the "employer."

23        75.    California Government Code section 12940, subdivision (a), provides, in pertinent part:

24   "It shall be an unlawful employment practice . . . [for] an employer, because of . . . physical disability,

25   mental disability, [or] medical condition . . . to refuse to hire or employ the person, . . . or to bar or to

26   discharge from employment . . . or to discriminate against the person in compensation or in terms,

27   conditions, or privileges of employment."

28        76.    At all times relevant to this Complaint, Plaintiff Pedro Oliveros is protected from

                                          16.

                             COMPLAINT FOR DAMAGES

1  unlawful employment discrimination based on his disability and medical condition under the FEHA,

2  because of his medical diagnosis for anxiety and stress.

3        77.    At all times relevant to this Complaint, Defendants engaged in a series of

4  discriminatory acts against Plaintiff Pedro Oliveros because of his disability and medical condition

5  after he went out on a company-approved medical leave of absence for anxiety and stress on April 27,

6  2021, by: (1) misrepresenting to him that his Area Sales Manager position was eliminated based on

7  the RSAP Plan, which offered him the option of accepting a demoted role as a Senior Account

8  Executive in one of the least productive sales territories in the Northern California Sales District or

9  accept a severance package that included a significant buyout of his future pension award—Plaintiff

10  Pedro Oliveros could not accept the RSAP Plan severance package without accepting a buy-out of his

11  future pension award; (2) requiring Plaintiff Pedro Oliveros to provide an answer to his RSAP Plan

12  "options" within 72 hours, while he was on company-approved medical leave for stress-related issues

13  and was still experiencing those stress-related issues, and on the false pretense that his Area Sales

14  Manager position for the North Bay "wine country" sales territory was actually eliminated through the

15  RSAP Plan; (3) posting Plaintiff Pedro Oliveros's Area Sales Manager position for the North Bay

16  "wine country" sales territory on the UPS job board after Defendant UPS's Director of Sales Gary

17  Brown told him that his job was eliminated through the RSAP Plan; (4) informing him that the Senior

18  Account Executive position in the San Francisco sales territory was no longer available to him, even

19  though Defendant UPS subsequently posted that position on the UPS job board; (5) replacing him as

20  the Area Sales Manager for the North Bay "wine country" sales territory with a much younger (who,

21  on information and belief, is under 40 years old) and inexperienced person from the East Coast who

22  lacked any relevant experience in the wine industry (which was critical for success in that territory

23  and unlike Plaintiff Pedro Oliveros who had approximately 20 years of experience in the wine industry

24  and who had developed a specialized knowledge and expertise in the area) and who happened to be a

25  subordinate of Defendant UPS's Vice President of Sales Dana Holliday (who has a reputation of

26  corporate favoritism by promoting younger (under 40 years old ) and inexperienced subordinates who

27  directly worked for him over older and more experienced employees), through an application process

28  that was a mere front and formality and effectively shut out another older and more experienced

employee from the position; and (6) wrongfully terminating his employment on the basis of age, disability, and medical condition, as well as for taking a protected medical leave of absence, through the pretense of the RSAP Plan process.

78.     Plaintiff Pedro Oliveros's disability and medical condition was a substantial motivating reason for these series of discriminatory actions committed by Defendants against him.

79.     As a direct and proximate result of Defendants' unlawful discrimination against Plaintiff Pedro Oliveros because of his disability and medical condition, Plaintiff Pedro Oliveros suffered and continues to suffer compensatory damages, including: lost wages; loss of future earnings and earning capacity; loss of bonuses and deferred compensation; loss of benefits, such as health insurance, life insurance, and retirement (including loss of pension contributions); emotional distress; mental anguish; embarrassment; humiliation, loss of future advancement; and damage to his reputation in the business community. Plaintiff Pedro Oliveros additionally seeks prejudgment interest accruing from the date of the filing of this action pursuant to California Civil Code sections 3281 and/or 3288, and/or any other provision of law providing for prejudgment interest.

80.     As a direct and proximate result of Defendants' discrimination against Plaintiff Pedro Oliveros because of his disability and medical condition, Plaintiff Pedro Oliveros needed to hire attorneys to prosecute the allegations in this Complaint and has incurred and is expected to continue to incur attorneys' fees. Pursuant to California Government Code section 12965, subdivision (b), Plaintiff Pedro Oliveros requests the Court for an award of attorneys' fees against Defendants.

81.     In discriminating against Plaintiff Pedro Oliveros because of his disability and medical condition, Defendants acted oppressively, fraudulently, and maliciously. These acts were carried out, authorized, or ratified by Defendants' directors, officers, and/or managing agents. Plaintiff Pedro Oliveros therefore requests the Court for an award of punitive damages against Defendants in an amount appropriate to punish and make an example of them.

/ /

/ /

/ /

/ /

18.

### THIRD CAUSE OF ACTION

**Violation of California Family Rights Act**

**(Cal. Gov. Code, § 12945.2)**

**Against All Defendants**

82.     Plaintiff Pedro Oliveros re-alleges and incorporates by reference all previous paragraphs of this Complaint.

83.     California Government Code section 12945.2, subdivision (a), provides: "It shall be an unlawful employment practice for any employer, as defined in paragraph (3) of subdivision (b), to refuse to grant a request by any employee with more than 12 months of service with the employer, and who has at least 1,250 hours of service with the employer during the previous 12-month period or who meets the requirements of subdivision (r), to take up to a total of 12 workweeks in any 12-month period for family care and medical leave. Family care and medical leave requested pursuant to this subdivision shall not be deemed to have been granted unless the employer provides the employee, upon granting the leave request, a guarantee of employment in the same or a comparable position upon the termination of the leave."

84.     California Government Code section 12945.2, subdivision (q), further provides that it "shall be an unlawful employment practice for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided under this section [of the California Family Rights Act, as codified in California Government Code section 12945.1 et seq.]."

85.     On April 27, 2021, Plaintiff Pedro Oliveros took a company-approved medical leave of absence in accordance with his doctor's diagnosis for anxiety and stress. This was the only time Plaintiff Pedro Oliveros took a medical leave of absence in his approximate 30-year career working for Defendant UPS.

86.     Defendants interfered with Plaintiff Pedro Oliveros's protected medical leave when Gary Brown (who was Director of Sales for the Northern California Sales District) misrepresented to Plaintiff Pedro Oliveros that his Area Sales Manager position for the North Bay "wine country" sales territory was selected for elimination and that he only had 72 hours to either accept a demotion to the position of Senior Account Executive in one of the least productive territories in the sales district or a

19.

severance package that included a substantial buyout of his otherwise earned pension, when in fact his position was never actually selected for elimination. In furtherance of its unlawful interference, Defendant UPS required Plaintiff Pedro Oliveros to make this extremely difficult decision regarding his future employment with the company within 72 hours, even though Plaintiff Pedro Oliveros was not in the requisite condition to make an appropriate and reasoned decision about his employment options—let alone a decision within 72 hours—because of the significant stress and anxiety that he was suffering from, which predicated his need for a medical leave of absence in the first place.

87.    Defendants further interfered with Plaintiff Pedro Oliveros's employment and protected medical leave of absence because they designated him for termination and then replaced him as the Area Sales Manager for the North Bay "wine country" sales territory with a much younger and inexperienced person from the East Coast who lacked any relevant experience in the wine industry (which was critical for success in that territory and unlike Plaintiff Pedro Oliveros who had approximately 20 years of experience in the wine industry and who had developed a specialized knowledge and expertise in the area) and who happened to be a subordinate of Defendant UPS's Vice President of Sales Dana Holliday (who has a reputation of corporate favoritism by promoting younger (under 40 years old ) and inexperienced subordinates who directly worked for him over older and more experienced employees), through an application process that was a mere front and formality and effectively shut out another older and more experienced employee from the position.

88.    Instead of providing Plaintiff Pedro Oliveros with a "comparable position," as required by California Government Code section 12945.2, subdivision (a), Defendants wrongfully terminated his employment because of his age, disability, medical condition, as well as for taking a protected medical leave of absence.

89.    Defendants acted willfully, intentionally, and with reckless disregard for Plaintiff Pedro Oliveros's rights under the California Family Rights Act.

90.    As a direct and proximate result of Defendants' discrimination against Plaintiff Pedro Oliveros for taking a medical leave of absence, Plaintiff Pedro Oliveros needed to hire attorneys to prosecute the allegations in this Complaint and has incurred and is expected to continue to incur attorneys' fees. Pursuant to California Government Code section 12965, subdivision (b), Plaintiff

20.

1 | Pedro Oliveros requests the Court for an award of attorneys' fees against Defendants.

2 |       91.    In discriminating against Plaintiff Pedro Oliveros because of his disability and medical

3 | condition, Defendants acted oppressively, fraudulently, and maliciously. These acts were carried out,

4 | authorized, or ratified by Defendants' directors, officers, and/or managing agents. Plaintiff Pedro

5 | Oliveros therefore requests the Court for an award of punitive damages against Defendants in an

6 | amount appropriate to punish and make an example of them.

7 | <center>**FOURTH CAUSE OF ACTION**</center>

8 | <center>**Wrongful Termination - Public Policy**</center>

9 | <center>**Against All Defendants**</center>

10 |       92.    Plaintiff Pedro Oliveros re-alleges and incorporates by reference all previous

11 | paragraphs of this Complaint.

12 |       93.    At all times relevant to this Complaint, the public policy of the State of California, as

13 | codified, expressed, and mandated in the FEHA, prohibits employers from discriminating against

14 | employees because of their protected characteristics, including age, disability, and medical condition.

15 |       94.    At all times relevant to this Complaint, the public policy of the State of California, as

16 | codified, expressed and mandated in the California Family Rights Act, prohibits employers from

17 | interfering with, restraining, or denying the exercise of, or the attempt to exercise an employee's right

18 | to a take a protected medical leave of absence.

19 |       95.    Defendants wrongfully terminated Plaintiff Pedro Oliveros's employment on the basis

20 | of his age, disability, and medical condition, and interfered with his right to a take a protected medical

21 | leave of absence, by replacing him with a much younger and inexperienced employee through an act

22 | of corporate favoritism and consistent with Defendants' goal of trimming operational and labor costs

23 | by reducing pension liabilities, while Plaintiff Pedro Oliveros was out on a company-approved medical

24 | leave of absence for anxiety and stress, per his doctor's orders.

25 |       96.    As a direct and proximate result of Defendant's wrongful termination of Plaintiff Pedro

26 | Oliveros's employment because of his age, disability, and medical condition, and for taking a protected

27 | medical leave of absence, Plaintiff Pedro Oliveros needed to hire attorneys to prosecute the allegations

28 | in this Complaint and has incurred and is expected to continue to incur attorneys' fees. Pursuant to

<center>21.</center>

California Code of Civil Procedure section 1021.5, Plaintiff Pedro Oliveros therefore requests the Court for an award of attorneys' fees against Defendants because the allegations in this Complaint seek the enforcement of an important public right affecting the public interest.

97.     In wrongfully terminating Plaintiff Pedro Olivero's employment because of his age, disability, and medical condition, and for taking a protected medical leave of absence, Defendants acted oppressively, fraudulently, and maliciously. These acts were carried out, authorized, or ratified by Defendants' directors, officers, and/or managing agents. Plaintiff Pedro Oliveros therefore requests the Court for an award of punitive damages against Defendants in an amount appropriate to punish and make an example of them.

## FIFTH CAUSE OF ACTION

### Intentional Infliction of Emotion Distress

### Against All Defendants

98.     Plaintiff Pedro Olivero re-alleges and incorporates by reference all previous paragraphs of this Complaint.

99.     Intentional infliction of emotional distress is actionable when a person engages in extreme and outrageous conduct with either: (1) an intent to cause emotional distress; or (2) reckless disregard of the probability of causing emotional distress, and actually does cause severe emotional suffering. (See *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050.)

100.    When Defendants committed the acts alleged in this Complaint, they did so deliberately and intentionally to cause Plaintiff Pedro Oliveros to suffer humiliation, mental anguish, and emotional distress. The outrageousness of the above-described conduct is especially aggravating because of upper management's abuse of their positions with actual and apparent authority over Plaintiff Pedro Oliveros, such as is commonly found in employment relationships. Defendants were aware that its unlawful acts would cause Plaintiff Pedro Oliveros to suffer extreme emotional distress and other consequential damages, especially because, Plaintiff Pedro Oliveros was already on a protected medical leave of absence for anxiety and stress, as recommended by his medical doctor, when Defendants committed the acts alleged in this Complaint.

101.    Defendants' unlawful acts constituted intentional infliction of emotional distress

22.

1    against Plaintiff Pedro Oliveros and such conduct was a substantial or determining factor in causing

2    damage and injury to Plaintiff Pedro Oliveros.

3          102.   As a result of Defendants' commission of intentional infliction of emotional distress

4    against Plaintiff Pedro Oliveros, Plaintiff Pedro Oliveros suffered and continues to suffer severe

5    emotional distress, amounting to substantial loss and damages including, loss of salary, future

6    advancement, bonuses, benefits (including medical and pension benefits), depression, anxiety,

7    insomnia, embarrassment, humiliation, and mental anguish in an amount to be determined at trial.

8          103.   In committing this intentional infliction of emotional distress against Plaintiff Pedro

9    Oliveros, Defendants acted maliciously, fraudulently, and oppressively. These acts were carried out,

10   authorized, or ratified by Defendants' directors, officers, and/or managing agents. Plaintiff Pedro

11   Oliveros therefore requests the Court for an award of punitive damages against Defendants in an

12   amount appropriate to punish and make an example of them.

13                              **SIXTH CAUSE OF ACTION**

14                              **Failure to Pay All Wages**

15                           **(Cal. Lab. Code, §§ 200 and 201)**

16                              **Against All Defendants**

17         104.   Plaintiff Pedro Oliveros re-alleges and incorporates by reference all previous

18   paragraphs of this Complaint.

19         105.   Pursuant to California Labor Code sections 200 and 201, it is unlawful for an employer

20   to not pay an employee all wages due at the time of his termination.

21         106.   According to the California Labor Code, "wages" are defined to include "all amounts

22   for labor performed by employees of every description, whether amount is fixed or ascertained by the

23   standard of time, task, piece, commission basis, or other method of calculation." (Cal. Lab. Code, §

24   200, subd. (a).)

25         107.   Plaintiff Pedro Oliveros's employment was terminated on June 30, 2021, as detailed

26   above.

27         108.   To date, Defendants have not paid Plaintiff Pedro Oliveros all owed wages.

28   Specifically, Defendant UPS failed to pay Plaintiff Pedro Oliveros the wages he earned from June 22,

                                            23.

                                  COMPLAINT FOR DAMAGES

1    2021, to June 30, 2021, as promised by Dana Holliday, Defendant UPS's Vice President of Sales, after

2    he returned from a medical leave of absence.

3            109.    Plaintiff Pedro Oliveros therefore requests recovery of wages owed, interest, and

4    attorneys' fees and costs pursuant to California Labor Code sections 218.5 and 218.6.

5                                        **SEVENTH CAUSE OF ACTION**

6                                   **Failure to Pay All Wage Due at Separation**

7                                        **(Cal. Lab. Code, §§ 201-203)**

8                                          **Against All Defendants**

9            110.    Plaintiff Pedro Oliveros re-alleges and incorporates by reference all previous

10   paragraphs of this Complaint.

11           111.    California Labor Code section 201 requires an employer who discharges an employee

12   to pay all compensation due and owing to that employee immediately upon the employee's discharge

13   from employment.

14           112.    California Labor Code section 203 provides that if an employer willfully fails to pay

15   all compensation due promptly upon discharge or resignation, as required by California Labor Code

16   sections 201 and 202, the employer shall be liable for waiting time penalties in the form of continued

17   compensation for up to thirty (30) days.

18           113.    As alleged in this Complaint, the unpaid wages owed to Plaintiff Pedro Oliveros at the

19   time of his separation of employment by Defendants include the wages he earned from June 22, 2021,

20   to June 30, 2021, as promised by Dana Holliday, Defendant UPS's Vice President of Sales, after

21   Plaintiff Pedro Oliveros returned from a medical leave of absence.

22           114.    By failing to properly compensate Plaintiff Pedro Oliveros upon separation,

23   Defendants have willfully failed and continue to fail to pay all accrued wages and other compensation

24   owed to Plaintiff Pedro Oliveros in accordance with California Labor Code section 201.

25           115.    As a direct and proximate result of Defendants failure to pay all wages due upon

26   separation, Plaintiff Pedro Oliveros sustained economic damages.

27           116.    Plaintiff Pedro Oliveros can recover from Defendants the statutory penalty wages for

28   each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code

24.

1    section 203.

2                            **EIGHTH CAUSE OF ACTION**

3              **Failure To Provide Accurate Itemized Wage Statements**

4                              **(Cal. Labor Code, § 226)**

5                               **Against All Defendants**

6         117.    Plaintiff Pedro Oliveros re-alleges and incorporates by reference all previous

7    paragraphs of this Complaint.

8         118.    California Labor Code section 226, subdivision (a), requires employers to provide to

9    their employees, on a semimonthly basis or at the time the employer pays wages, with an accurate

10   itemized wage statement in writing detailing the following information: (1) gross wages earned; (2)

11   total hours worked by the employee; (3) the number of piece-rate units earned and any applicable piece

12   rate if the employee is paid on a piece-rate basis; (4) all deductions, provided that all deductions made

13   on written orders of the employee may be aggregated and shown as one item; (5) net wages earned;

14   (6) the inclusive dates of the period for which the employee is paid; (7) the name of the employee and

15   his or her social security number; (8) the name and address of the legal entity that is the employer; and

16   (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours

17   worked at each hourly rate by the employee.

18        119.    California Labor Code section 226, subdivision (e), provides that an employee who

19   suffers injury as a result of a knowing and intentional failure by an employer to comply with section

20   226, subdivision (a), may recover the greater of actual damages or the statutory penalty of fifty dollars

21   ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per

22   employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four

23   thousand dollars ($4,000).

24        120.    California Labor Code section 226, subdivision (e)(2)(A), provides that an employee

25   is deemed to suffer injury if the employer fails to provide a wage statement,

26        121.    Defendant intentionally and willfully failed to provide Plaintiff Oliveros with wage

27   statements for the time Plaintiff Oliveros worked from June 22, 2021, to June 30, 2021, in violation

28   of California Labor Code section 226, subdivision (e)(2)(A).

                                            25.

122.  As a direct and proximate result of Defendants' failure to provide itemized wage statements as required by California law, Plaintiff Pedro Oliveros suffered injuries and damages.

123.  Plaintiff Pedro Oliveros can recover from Defendants the greater of the actual damages caused by Defendants' failure to comply with California Labor Code section 226, subdivision (a), or an aggregate penalty not exceeding four thousand dollars per employee, reasonable attorneys' fees, and costs of suit.

## NINTH CAUSE OF ACTION

### Unfair And Unlawful Business Practices

### (Cal. Business & Professions Code, §§ 17200 et seq.)

### Against All Defendants

124.  Plaintiff Pedro Oliveros re-alleges and incorporates by reference all previous paragraphs of this Complaint.

125.  As alleged in this Complaint, Defendants' conduct, has been, and continues to be, unfair, unlawful, and harmful to Plaintiff Pedro Oliveros. Plaintiff Pedro Oliveros seeks to enforce important rights affecting the public interest within the meaning of California Code of Civil Procedure section 1021.5.

126.  As alleged in this Complaint, Defendants' actions violate California law and constitute unlawful business acts and practices in violation of California Business & Professions Code section 17200 et seq.

127.  A violation of California Business & Professions Code section 17200 et seq. may be based on the violation of any state or federal law. In the present case, Defendants' failure to pay all wages owed to Plaintiff Pedro Oliveros violates California Labor Code sections 200 and 201; Defendants' failure to timely pay all wages owed to Plaintiff Pedro Oliveros upon termination violates California Labor Code sections 201, 202, and 203; and Defendants' failure to provide accurate itemized wage statements for time worked by Plaintiff Pedro Oliveros violates California Labor Code section 226.

128.  As alleged in this Complaint, Defendants' unlawful business acts involve, but are not necessarily limited to the loss of money and/or property.

26.

129.    Because of Defendants' violations of the California Labor Code, Plaintiff Pedro Oliveros sustained damages and/or injuries.

130.    Pursuant to California Business & Professions Code sections 17200 et seq., Plaintiff Pedro Oliveros can recover from Defendants restitution in the amount of the wages unlawfully withheld and retained by Defendants, costs, and attorneys' fees pursuant to California Code of Civil Procedure section 1021.5.

## REQUEST FOR JURY TRIAL

131.    Plaintiff Pedro Oliveros hereby demands a jury trial on all causes of action and claims so triable.

## PRAYER FOR RELIEF

132.    WHEREFORE, Plaintiff Pedro Oliveros prays for the following relief and judgment:

      a.    For general and special damages, including but not limited to, lost back pay plus interest, lost fringe benefits, lost pension benefits, lost medical benefits, future lost earnings, future fringe benefits, lost earning capacity, emotional distress, and pain and suffering, according to proof;

      b.    For punitive damages, as allowed by law, that will sufficiently punish, make an example of, and deter future conduct by Defendants;

      c.    For an award of pre-judgment and post-judgment interest;

      d.    For an award of reasonable attorneys' fees;

      e.    For costs of suit; and

      f.    For such other and further relief the Court may deem just and proper.

//
//
//
//
//
//
//

27.

1    Dated: April 19, 2022

2

3                                                _____

4                                                JOSE MACIAS, JR.
                                                 HECTOR RODRIGUEZ
5                                                TRAVIS M. ADAMS

6                                                **MACIAS RODRIGUEZ ADAMS LLP**

7                                                Attorneys for Plaintiff
                                                 PEDRO OLIVEROS
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            28.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
UNITED PARCEL SERVICE, INC., an Ohio corporation; and DOES 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
PEDRO OLIVEROS, an individual

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California
County of Alameda
**04/19/2022**
Chad Finke, Executive Officer / Clerk of the Court
By: _____ X. Bowie _____ Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Superior Court of California County of Alameda Oakland - Rene C. Davidson Courthouse 1225 Fallon Street Oakland, CA 94612 | **CASE NUMBER:** *(Número del Caso):* **22CV010096** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jose Macias, Jr., Hector J. Rodriguez, Travis M. Adams
Macias Rodriguez Adams LLP
1550 The Alameda, Suite 332, San Jose, CA 95126

| DATE: *(Fecha)* 04/19/2022  Chad Finke, Executive Officer / Clerk of the Court | Clerk, by *(Secretario)* | X. Bowie | , Deputy *(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*



**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* United Parcel Service, Inc, an Ohio corporation
   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 4/26/2022

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | American LegalNet, Inc. www.FormsWorkflow.com | Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |
|---|---|---|---|

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Jose Macias, Jr. (SBN 265033); Hector J. Rodriguez (SBN 305446); Travis M. Adams (SBN 303447) Macias Rodriguez Adams LLP 1550 The Alameda, Suite 332, San Jose, CA 95126 TELEPHONE NO.: (408) 455-1243    FAX NO.: ATTORNEY FOR *(Name):* Plaintiff PEDRO OLIVEROS | **ELECTRONICALLY FILED** Superior Court of California, County of Alameda 04/19/2022 at 04:56:49 PM By: Xian-xii Bowie, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **ALAMEDA**
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland 94612
BRANCH NAME: Oakland - Rene C. Davidson Courthouse

CASE NAME: Pedro Oliveros v. United Parcel Service, Inc., et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | **22CV010096** |
| | | | JUDGE: |
| | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☒ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☒ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☒ punitive
4. Number of causes of action *(specify):* 9
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 19, 2022

Travis M. Adams
(TYPE OR PRINT NAME)                    ► *Travis Adams*
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36) Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

American LegalNet, Inc.
www.FormsWorkflow.com

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
| COURTHOUSE ADDRESS:<br>Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 | **FILED**<br>Superior Court of California<br>County of Alameda<br>04/19/2022<br>Clad Fike, Executive Officer / Clerk of the Court<br>By: _____ Deputy<br>X. Bowie |
| PLAINTIFF(S):<br>Pedro Oliveros | |
| DEFENDANT(S):<br>United Parcel Service, Inc., an Ohio corporation | |
| **NOTICE OF CASE ASSIGNMENT** | CASE NUMBER:<br>22CV010096 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:

| | |
|---|---|
| ASSIGNED JUDGE: | Eumi Lee |
| DEPARTMENT: | 512 |
| LOCATION: | Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 |
| PHONE NUMBER: | (510) 690-2721 |
| FAX NUMBER: | |
| EMAIL ADDRESS: | Dept512@alameda.courts.ca.gov |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

Please note: In this case, any challenge pursuant to Code of Civil Procedures section 170.6 must be exercised within the time period by law. (See Code of Civ. Proc. §§ 170.6, subd. (a.)(2) and 101.3)

NOTICE OF NONAVAILABILITY OF COURT REPORTERS: Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate). Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording. Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available. For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

GENERAL PROCEDURES

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the Rene C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544 and through Civil e-filing. Information regarding Civil e-filing can be found on the courts website. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

<div align="center"><strong>NOTICE OF CASE ASSIGNMENT</strong></div>

ACSC (Rev. 10/21)                                                                                           Page 1 of 2

**ASSIGNED FOR ALL PURPOSES TO**

JUDGE <u>Eumi Lee</u>

DEPARTMENT <u>512</u>

All parties are expected to know and comply with the Local Rules of this Court, which are available on the court's website at http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1) and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processed (ADR) prior to the Initial Case Management Conference.  The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days."   The court's website contains this form and other ADR information.  If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

COURT RESERVATIONS

The use of the Court Reservation System (CRS) is now mandated in many civil courtrooms within the Alameda County Superior Court. Instead of calling or emailing the courtroom to make a reservation, parties with a case assigned to a courtroom using CRS are directed to utilize CRS to make and manage their own reservations, within parameters set by the courtrooms. CRS is available 24 hours a day, seven days a week and reservations can be made from a computer or smart phone. Please note, you are prohibited from reserving more than one hearing date for the same motion.

Prior to scheduling any motion on CRS, including any Applications for Orders for Appearance and Examination, or continuing any motion, please review the online information (if any) for the courtroom in which you are reserving. There may be specific and important conditions associated with certain motions and proceedings. Information is available on the court's eCourt Public Portal at www.eportal.alameda.courts.ca.gov.

Chad Finke, Executive Officer / Clerk of the Court

By

X. Bowie, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT**

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS: Hayward Hall of Justice 24405 Amador Street, Hayward, CA 94544 | **FILED** Superior Court of California County of Alameda 04/20/2022 Clad Flake, Executive Officer / Clerk of the Court By: _M̲e̲l̲l̲y̲_ _____ Deputy M. Kautz |
| PLAINTIFF: Pedro Oliveros | |
| DEFENDANT: United Parcel Service, Inc., an Ohio corporation | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER: 22CV010096 |

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

> Date: 08/08/2022   Time: 9:30 AM   Dept.: 512
>
> Location: Hayward Hall of Justice
>            24405 Amador Street, Hayward, CA 94544

TO DEFENDANT(S)/ATTORNEY(S) FOR DEFENDANT(S) OF RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA CIV-100 [Rev. 10/2021]

**NOTICE OF
CASE MANAGEMENT CONFERENCE**

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 | **FILED**<br>Superior Court of California<br>County of Alameda<br>04/20/2022<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _Melly Kautz_ Deputy<br>M. Kautz |
| PLAINTIFF/PETITIONER:<br>Pedro Oliveros | |
| DEFENDANT/RESPONDENT:<br>United Parcel Service, Inc., an Ohio corporation | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>22CV010096 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Travis Adams
Macias Rodriguez Adams LLP
1550 The Alameda, Suite 332
San Jose, CA 95126

Chad Finke, Executive Officer / Clerk of the Court

Dated: 04/20/2022                                    By:

_Melly Kautz_

M. Kautz, Deputy Clerk

CERTIFICATE OF MAILING